NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

RURAL ROAD EXECUTIVE SUITES, LLC, *Plaintiff/Appellee,*

*v.*

ACUPUNCTURE WITH ASHLEE, LLC, et al., *Defendants/Appellants.*

No. 1 CA-CV 24-0025
FILED 12-10-2024

Appeal from the Superior Court in Maricopa County
No. CV2023-018256
The Honorable Richard F. Albrecht, *Commissioner*

**AFFIRMED**

COUNSEL

Casler Law Office PLLC, Avondale
By Carlton C. Casler
*Counsel for Plaintiff/Appellee*

Frazer Ryan Goldberg & Arnold LLP, Phoenix
By James Michael Cool
*Counsel for Defendants/Appellants*

_____

**MEMORANDUM DECISION**

Presiding Judge Michael S. Catlett delivered the decision of the Court, in which Judge Jennifer M. Perkins and Vice Chief Judge Randall M. Howe joined.

_____

**C A T L E T T**, Judge:

¶1　　　　Acupuncture with Ashlee, LLC ("Tenant"), Ashlee Halsell, and Jimmy Halsell appeal the superior court's judgment finding Tenant guilty of forcible detainer and awarding attorney fees to Rural Road Executive Suites, LLC ("Landlord").  We affirm the judgment.

**FACTS AND PROCEDURAL HISTORY**

¶2　　　　In May 2018, Tenant signed a written lease to rent commercial property from Rural Court, LLC ("Rural Court").  The Halsells were guarantors on the lease.  The lease stated that Tenant was required to pay rent "without offset or deduction," on or before the day rent was due.  The lease further provided that if Tenant failed to pay rent, Rural Court could issue written notice of default, after which Tenant had three business days to pay.  Tenant's failure to cure nonpayment within three business days was a breach of the lease.  In the event of a breach, Rural Court could recover reasonable attorney fees.

¶3　　　　In March 2021, Tenant extended the lease for three years, with the new lease term ending on July 31, 2024.  In May 2021, Rural Court sold the commercial property and assigned its interest in the lease to Landlord.

¶4　　　　In July 2023, Landlord filed a forcible detainer action against Tenant in the Kyrene Justice Court for nonpayment of operating expenses, 2021 common area maintenance ("CAM") charges, and rent for the month of July 2023.  After a bench trial, the justice court found both Landlord and Tenant in noncompliance with the lease.  The justice court denied Landlord's request for eviction and ordered the parties to bear their own attorney fees.  But the justice court also ordered Tenant to pay Landlord $7,285.46 within five days of the judgment.  This sum appeared to include a combination of Landlord's attorney fees and the 2021 CAM charges, which contradicted the justice court's ruling.  As a result, Tenant moved for clarification, requesting that the justice court confirm whether Tenant was

liable for those amounts. Pending the justice court's ruling, Tenant paid Landlord the full $7,285.46.

¶5          On September 28, 2023, the justice court confirmed that Tenant was not required to pay Landlord's attorney fees or the 2021 CAM charges but did not clarify the amount Tenant should have paid, if any. Tenant subsequently requested Landlord refund the full $7,285.46 ("the Overpayment"). When Landlord did not respond, Tenant insisted Landlord apply the Overpayment to Tenant's upcoming rent due in November and December 2023. Landlord again did not respond to that demand. Instead, Landlord sent Tenant an invoice for November 2023 rent and reminded Tenant that the lease required payment of rent without any offsets or deductions.

¶6          When rent for November 2023 came due, Tenant did not make a separate rent payment. On November 2, 2023, Landlord sent Tenant a notice of default. Six days later, Landlord sent Tenant a notice of breach and demand for possession. Tenant did not vacate the property.

¶7          On November 20, 2023, Landlord filed a forcible detainer action against Tenant in Maricopa County Superior Court for nonpayment of rent for November. Landlord then filed a motion for judgment on the pleadings, arguing Tenant was guilty of forcible detainer for failing to pay rent for November 2023. Landlord further argued Tenant was not entitled to any credit for the Overpayment because the lease expressly prohibited offsets.

¶8          Tenant responded to Landlord's motion for judgment on the pleadings and moved to dismiss Landlord's claim. In its response to Landlord's motion, Tenant asserted Landlord was obligated to apply the Overpayment to rent due for November and December 2023 because Tenant had erroneously paid an amount that included attorney fees and 2021 CAM charges, which the justice court expressly declined to award. In its motion to dismiss, Tenant argued that the justice court had already rejected Landlord's claim, and it was therefore barred under the doctrine of *res judicata*.

¶9          The superior court granted Landlord's motion for judgment on the pleadings and found Tenant guilty of forcible detainer. The superior court awarded Landlord possession of the commercial property and a monetary judgment in the amount of $15,499.03, which included attorney fees. Tenant subsequently filed a motion for relief from judgment, which the court denied.

3

**¶10** Tenant timely appealed. We have jurisdiction. *See* A.R.S. § 12-2101(A)(1).

## DISCUSSION

**¶11** Tenant argues the superior court erred in finding it guilty of forcible detainer and denying its motion for relief from judgment because Landlord was required to apply the Overpayment to rent due in November and December 2023. Tenant argues the superior court erroneously concluded its request to apply the Overpayment to future rent was a request for an offset. Tenant also argues the superior court erred by refusing to give the justice court's rulings preclusive effect. Finally, Tenant argues the superior court erred in awarding Landlord attorney fees.

## I.     Offset and Breach

**¶12** The lease required Tenant to pay rent "without offset or deduction[.]" Tenant does not dispute that it failed to make a separate payment for rent for November and December 2023 or that a failure to pay rent would ordinarily constitute a breach of the lease allowing Landlord to seek eviction. Rather, Tenant argues it did not owe rent for November or December 2023 because it requested, and Landlord was obligated, to apply the Overpayment to future rental obligations. The superior court concluded Tenant's request was a request to offset rent, which the lease prohibits. We agree.

**¶13** We review the superior court's interpretation of the lease and its legal conclusions *de novo*. *Grosvenor Holdings, L.C. v. Figueroa*, 222 Ariz. 588, 593 ¶ 9 (App. 2009); *Town of Marana v. Pima Cnty.*, 230 Ariz. 142, 152 ¶ 46 (App. 2012). Because neither party disputes that the lease clearly and unambiguously prohibits offsets, "we give effect to the agreement as written." *Town of Marana*, 230 Ariz. at 147 ¶ 21.

**¶14** The terms offset and setoff are used interchangeably to describe the right of parties "owing each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'" *Urias v. PCS Health Sys., Inc.*, 211 Ariz. 81, 85 ¶ 21 (App. 2005) (quoting *Citizens Bank v. Strumpf*, 516 U.S. 16, 18 (1995)). Black's Law Dictionary similarly defines offset as "[s]omething (such as an amount or claim) that balances or compensates for something else" and setoff as "[a] defendant's counterdemand against the plaintiff, arising out of a transaction independent of the plaintiff's claim." *Offset*, Black's Law Dictionary (12th ed. 2024); *Setoff*, Black's Law Dictionary (12th ed. 2024).

4

**¶15** Applying these definitions, Tenant's request that Landlord apply the Overpayment to future rent was a request for an offset. Tenant paid Landlord $7,285.46 stemming from Landlord's claims for nonpayment of operating expenses, 2021 CAM charges, and July 2023 rent. When the justice court clarified that Tenant was not liable for the entirety of these amounts, Tenant requested Landlord instead use the Overpayment to satisfy Tenant's rent for November and December 2023. The mere fact that Tenant paid Landlord amounts for operating expenses, CAM charges, and rent for July 2023—all of which were unrelated to rent for November and December 2023—did not discharge Tenant's obligation under the lease to pay future rent. By requesting Landlord apply the Overpayment to future rental obligations, Tenant requested an offset to rent, which the lease unambiguously prohibits.

**¶16** Even if the lease did not expressly prohibit offsetting rent through other payments, Tenant's argument would still fail. In Arizona, offsets "are not available either as a defense or for affirmative relief" in forcible detainer actions unless specifically provided for by statute or the rental agreement. *Olds Bros. Lumber v. Rushing*, 64 Ariz. 199, 205 (1946); *Mead, Samuel & Co. v. Dyar*, 127 Ariz. 565, 569 (App. 1980); *United Effort Plan Tr. v. Holm*, 209 Ariz. 347, 351 (App. 2004); *Iverson v. Nava*, 248 Ariz. 443, 448 ¶ 12 (App. 2020). Tenant cites no statute, and we are aware of none, creating a right to offset its rent payments, and Tenant cites no provision in the lease *requiring* an offset. The superior court did not err in concluding that Tenant was not entitled to an offset for the Overpayment, and thus that Tenant was guilty of forcible detainer.

**¶17** Tenant also argues the superior court erred by refusing to give the justice court's rulings preclusive effect under the doctrine of *res judicata*. Tenant asserts that because Landlord did not offset future rental obligations, Landlord must have applied the Overpayment to its claim for attorney fees and 2021 CAM charges. And because the justice court ruled Landlord was not entitled to those attorney fees or 2021 CAM charges, *res judicata* barred Landlord from pursuing those claims further. Thus, Landlord could not apply the Overpayment to its claims from the justice court, and it had no choice but to apply the Overpayment to Tenant's November and December rent obligations.

**¶18** *Res judicata* has no application here. That doctrine bars relitigating issues already decided in a prior case. *See 4501 Northpoint LP v. Maricopa County*, 212 Ariz. 98, 102 ¶ 26 (2006). Tenant argues that the justice court's rulings were binding on Landlord in the superior court action. While that may be true, those rulings did not address the offset issue Tenant

raised in this action. The justice court never addressed whether Landlord was required to apply the Overpayment to November and December rent. The only issues the justice court decided were Landlord's claims for nonpayment of operating expenses, 2021 CAM charges, and July 2023 rent. There is no overlap between Landlord's claims in the justice court action and the claims in this litigation.

**¶19** To be clear, whether Landlord is entitled to keep or return all, or some portion of, the Overpayment is not before us and it was not before the superior court. This is because "[t]he *only* issue to be decided in [a forcible detainer] action is the right of possession." *Iverson*, 248 Ariz. at 448 ¶ 11 (quoting *Olds Bros. Lumber*, 64 Ariz. at 204). The superior court concluded only that Tenant could not avoid November and December rent by using the Overpayment as an offset, which the lease does not allow, and therefore Landlord is entitled to possession of the premises. The superior court was the first court to address that issue, meaning *res judicata* does not apply. Tenant has not established that the superior court erred in any respect.

## II.     Attorney Fees at the Superior Court

**¶20** The parties dispute whether the superior court's award of attorney fees to Landlord arose from the written lease agreement, A.R.S. § 12-341.01, or A.R.S. § 12-1178(A). Tenant asserts the superior court awarded Landlord attorney fees only under A.R.S. § 12-341.01. Quoting *Uyleman v. D.S. Rentco*, 194 Ariz. 300, 305 ¶ 27 (App. 1999), Tenant argues the superior court erred in doing so because the court failed to consider "whether an award to the prevailing party would discourage other parties with tenable claims from litigating legitimate contract issues for fear of incurring liability for substantial amounts of attorneys' fees." Landlord responds that the superior court awarded it attorney fees under the attorney fees provision in the lease.

**¶21** Regardless of the legal basis the superior court relied on for attorney fees, we affirm the award. This matter arose out of contract, so the superior court could award the successful party attorney fees under A.R.S. § 12-341.01(A). Moreover, the lease provided that Landlord is entitled to recover reasonable attorney fees in the event of a breach, including for nonpayment of rent. The superior court did not abuse its discretion in awarding Landlord attorney fees under § 12-341.01 or, alternatively, as provided in the written lease. *See* A.R.S. § 12-1178(A); *Peterson v. City of Surprise*, 244 Ariz. 247, 253 ¶ 25 (App. 2018); *Iverson*, 248 Ariz. at 450 ¶ 27.

**ATTORNEY FEES**

**¶22** Both Landlord and Tenant request attorney fees on appeal. As the successful party on appeal, Landlord is awarded its reasonable attorney fees and costs incurred on appeal pursuant to A.R.S. §§ 12-341 and -341.01, contingent upon its compliance with Arizona Rule of Civil Appellate Procedure 21.

**CONCLUSION**

**¶23** We affirm the superior court's judgment.



AMY M. WOOD • Clerk of the Court
FILED: TM